Mr. Morgan, whenever you're ready. Yes, Your Honor, I'd like to use eight minutes in reserve, too. Try to watch the clock, but I'll remind you. Thank you very much, Your Honor. Your Honor, this is a case where Mr. Miller has sued Scottsdale Police Department because they've been engaged in a battle over ten years regarding arrests at his restaurant. The first time was an elaborate sting operation with a fake traffic stop in his parking lot that disrupted his business. He complained about it and they arrested him. The second time was an elaborate undercover operation where they waited until he was having dinner and then they conducted a liquor check on his premises and when he objected to that, they arrested him and charged him with disorderly conduct. Here we are with the third case, a misdemeanor case, where they sent seven officers to issue an Arizona traffic ticket and complain. It wasn't a traffic ticket, it was a misdemeanor. That's what it's called in Arizona, Judge, traffic ticket and complain. Well, I know a little bit about Arizona. It's not a traffic ticket, but let me, that's irrelevant. Let me just, here's the question that I wanted to ask you. Assume, my question is this, is the only question before us whether there was probable cause for the arrest? Because as I read the case law, probable cause is a complete defense to both false arrest and retaliatory arrest. So am I wrong in thinking that the real question for us to resolve in this case is whether there was probable cause? I agree with you that that is one of the major issues in the case, probable cause. If we likely prevail, if we find that there was, doesn't that mean you don't prevail? No, Judge, I think that it falls under the needs exception and I briefed that, but would you like me to take the probable cause issue first? Yeah, well, I would because it seems to me that as I read the case law, it says, you know, we really don't worry about the motivation of officers in making an arrest if in fact there is probable cause. And so they may have gone out with evil motives. But if in fact there was probable cause to make the arrest, then we don't, you don't have a claim for retaliatory arrest. I believe that's an issue too, Judge. I'd like to start with the court's issue that they sent out to us to brief or to address here. And that was whether Judge Kiley's Maricopa County decision on how, whether it affects this case. And what he found was that the emergency orders dealt with businesses, not with individuals. Well, let me stop you for a second because that's an argument about why there was, it wouldn't be probable cause. I'm, and I want to give you a chance to make that argument. I'm just interested as a predicate matter, whether or not the existence of probable cause is dispositive of your claims. If there is probable cause, don't you lose? No judge, because the probable cause here that was ruled on by the trial court was whether it was for a violation of the emergency order. No, I understand you're arguing that he didn't violate the emergency order. On top of that, Judge, if it's just the emergency order, then the after you're cited and released. The site and release ends any further right to detain. What, what, and you think the Arizona Supreme Court has held that or the Supreme Court is? Judge, I think that goes to Rodriguez versus the United States. If it, once the issue of detention is, is resolved, there's no reason to continue to hold or rearrest somebody without new probable cause that gets into the disorderly conduct issues. But I think that that's what's dispositive of the, the site and release is dispositive of the emergency order allegation. What did Rodriguez versus United States hold? I'm curious, because that is an interesting question. Like in my head, can like a police officer stop someone twice for the same infraction? The answer's no. Okay. And, and why? Under, under the Fourth Amendment, under due process? Fourth Amendment. Okay. Why? The reason, Judge, is what Rodriguez held was that a person was stopped and the detention was continued to allow a drug dog to come. And the Supreme Court held that once you issue the ticket, release the person from any reason for the initial detention, you cannot continue to hold them while you conduct another investigation. Right, right. But that's, that's quite different. In other words, what Rodriguez held was that the prolonged detention of this person was not legal. It didn't say you couldn't arrest him thereafter for, for the violation. But you cannot continue to detain him unless you have new probable cause or new reasonable grounds. That's what Rodriguez held. So is it different here that he was cited, released, free to go, and then detained? Yes. And, and I think- You have to have new grounds for detention. Yeah, I, well, there is new grounds, but I guess nobody ever reached them in this case. The new grounds is disorderly conduct. Well, that's it. And the district, so if we were to agree, even if we were to agree with you, we'd have to send this back to the district court to determine whether there was probable cause to arrest him for disorderly conduct. That's my argument. Yeah. Okay. Can I just have a factual question? Do we know what he said in between, because it's not on the video, in between, you know what I'm talking about, between the cite and release and the arrest? No, Judge, it's convenient that after our officer Bailey issued the citation, he turned off his camera. And then when he turned around, he turned it back on, but it takes 30 seconds for the audio to start. So we do not have from his camera any audio of what was said. Do we have some of the- Do we have testimony about what was said? No, Judge, we have no testimony. No, I- We have other audio from other officers that was not submitted to the- No, I mean, in the record in this case, I thought there were, and maybe I'm mistaken, I thought there was deposition testimony. No, Your Honor, there's just a couple of other audios that were submitted by prior counsel on behalf of Mr. Miller. And so no, no, no declarations or affidavits from either side? Nothing. Police reports. Not from- Police reports with triple hearsay. Okay, but they can establish probable cause. The question, your client didn't submit a declaration. Oh, he did, yes. What did it say? It said he didn't do anything wrong. I know, I know it said that, but didn't it say more? Didn't it say he got in an argument with the officers about how they were always out to get him and they'd done all these things and it got heated and- Correct. Then something happened. And something happened, and quite frankly, it gave a history of all of the problems that he's had with Scottsdale Police Department over the years. And, but there's no, I don't think there was any admissions of any illegal conduct on his part. And he didn't feel he was being disorderly when he was being confronted with seven police officers surrounding his restaurant. He thought he had the right under Duran and all the Arizona cases to complain about the actions of the police. Can I shift your focus a little to the argument about the warning? So the, he was arrested on April 11th, which is at the time of the third executive order, correct? And then in the third executive order, for the first time, the governor says that people should be given a chance to comply with the order. Yeah. And so, and then one of your arguments, as I take it, is that he wasn't warned under that order, so therefore could not be charged under that executive order. Is that correct? Yes, your honor, that is correct. I see I'm coming up on the two minutes, but I'll just say this. There is some allegation in the police reports that there was a prior situation where my client was approached by the police and warned. Now, the, Judge Kiley held that this is a vagueness type argument and due process. Judge Kiley dealt with a different executive order, not this one, and he didn't deal with the warning issue. Well, Judge, I would submit to you that all of the emergency... Yes, I mean, I read Judge Kiley's decision. Yeah. He just, it is about a different executive order, correct? It is, but it, the same principles apply to all of the executive orders. Does he deal with the warning issue? No, he doesn't. I understand your argument that the orders only apply to businesses, not individuals, but Judge Blumenthal is asking a different question. Put aside the significance of the timing of the warnings for a second. Okay. I've read your client's affidavit. There's no dispute that previous warnings were given, is there? A warning with respect to the emergency order... They were operating the restaurant during the time of the executive order. It wasn't, I don't know if I'd characterize it as a warning because we don't know what was said or what the scope of the warning was. But the police report said they went twice on previous occasions to the restaurant and told them he was in violation of the executive order. That, I mean, I think that's, assuming that happened and I think it's a warning, do you, I'll give you an extra minute for a moment. You don't need to rush your answer. Do you dispute that, there's no dispute that a warning was given previously. He was previously put on notice that the police thought he was violating the executive order. There was some kind of conversation about that. I don't know if it amounts to a warning that would satisfy due process. Okay. Thank you. And we'll put some time back on the clock for you, Mr. Good morning. May it please the court. My name is Kathleen Winnicky. I represent the police, the city of Scottsdale and officer Bailey. The court is correct. Probable cause is dispositive of the issue. There was both probable cause to support the arrest for the violation of the emergency order 20-20-09, as well as disorderly conduct. Focus on the second for a moment, because the district judge didn't reach the issue of probable cause for disorderly conduct. How can we, do you think we can find probable cause on this record? Well, it doesn't- All I really see is Mr. Miller's affidavit that says, I yelled obscenities at the officers from far away. It's from the back of the store. So, so presumably because he was afraid to yell obscenities at them right next to them. Let me suggest- So what, what else do we have here that might establish probable cause for disorderly conduct? Certainly, your honor. Keep in mind that the citation was for 2904A1, which is the seriously, serious disruption of the neighborhood. That is an objective standard. It was what a reasonable officer would believe, whether there was serious disruption to the neighborhood. No evidence is needed that any particular person- So give me some help under Arizona law, which I pretend to know, but probably don't know on this topic. Sure. What case tells me that yelling obscenities at police officers is, violates 29104? Sure. And we need not focus on the obscenities, your honor. It is the actual behavior itself. We know that, for example, that in Julio L., a case cited by the Mr. Miller, the conduct is measured by an objective standard. And the evidence of actual disturbance is not required- All I can get out of this, and the police report really doesn't describe the conduct, other than the yelling of obscenities. So is the yelling of obscenities at a police officer enough to violate this statute? And if so, what case says that? In Ray Julio, which is cited in the pleadings, the serious disruptive behavior is defined to be that of the same general nature as fighting or violence for conduct liable to provoke that response in others, and thus to threaten the continuation of some event, function, or activity. That has been defined by our courts in Arizona. The conduct that is described in the record, in the incident reports, is that the, and this is referenced in SER 3, the body cam, the customers are observed at the window. And as Mr. Miller begins to yell and scream, they back away from the window. They cross their arms. They go into the parking lot. They retreat. That is enough information, we believe, on this record for a reasonably objective officer to believe that there is disorderly conduct. But let me get to this point, Your Honor. You need not go to that point because of the case that we cited, which is that on a site and release, there is sufficient basis for the officers to take Mr. Miller into custody. That is Gonzales v. Peoria, 722 F. 2nd 468, which we cited. And that court held in 1983. So you're arguing that the officers could cite him and then several, put aside the disorderly conduct for a second. Yes, sir. Several minutes later, say, well, we've cited him. We now want to arrest him because we have probable cause for the citation. Yes, that probable cause continues to allow the officers, as defined in Gonzales, 13-3903, does not preclude short-term custody. Subsection B authorizes the arresting officer to take the arrestee to the police station, issue written notice and a complaint, and then release the arrestee. So is it your view under the Fourth Amendment, an officer, like, just take a traffic stop. An officer could stop someone for a traffic offense, cite him, and then five minutes later say, you know what, I'm going to arrest you. And that's fine under the Constitution? Not a traffic stop. It has to be a misdemeanor offense under the 13-3833. Assume it's a traffic misdemeanor. Yes, assume it's a misdemeanor. It could. The officer has discretion if it's a misdemeanor because the case law says that you don't have to arrest immediately, so long as you have. But in this case, they cited and released him. So as far as Mr. Miller is concerned, the police attraction ended. But remember the record here. Mr. Miller said, which is clearly noted in the report, as well as on the body cam, give me the ticket. I'm just going to tear it up and throw it away. Sure. A ticket and citation is a promise to appear. By signing it, you are promising to appear in court. That is your written promise. The officer has discretion that if they do not believe you are going to honor that promise, they can take you into custody. But he started walking away. The officer barely started walking away. He signed it, started walking away, and went back into the restaurant to arrest him. His probable cause at that point didn't dissipate. He still had that probable cause. Which probable cause for what? For the violation that if he still didn't believe that you are going to honor that promise to appear, I still had probable cause to believe you violated. And then when he started to walk away and he came out, his probable cause still also had. The dramatic effect of walking away is sometimes helpful, but you have to be by the microphone for Judge Gould to hear you. I apologize. But there's got to be some limiting principle to that, right? An officer can't cite and release someone two days later and come back and say, you know what, I don't think you're going to show up. I'm going to arrest you. Do you agree with that? I agree with that. But think about it. So what's your principle that's limiting? What's your limiting principle here? Think about the cases that talk about, for example, a drug buy. There's a drug buy that's done three weeks before, and then three weeks later, they arrest. The case laws hold that that's a totally different situation. I mean, he gave a ticket, started walking away, the stop, the whole encounter was done. And then the officer, Bailey, decided to re-engage again, based off of something that was said, I assume. So I just don't understand how you could arrest someone or have two different, you know, a cite and release and arrest for the same probable cause when it's, you know, when there's time in between. Well, notwithstanding that point, Your Honor, we believe the record also supports probable cause for the disorderly. Yes. I think that probably makes more sense. Which is visible on the body camera. Let me go back to, and see if we can parse this first point a little bit, because it interests me also. I take it that there's no prohibition in the law from simultaneously citing and arresting someone. In other words, you can say, I'm not going to take you back to the station to write the citation. I'm going to write it for you here. But I'm going to take you back there or arrest you, you know, and give you the citation. The question in this case is, does the passage of time between the citation and the arrest do something to, do something to affect the ability to arrest? And so I have a couple of factual questions that may help me address that. How long was it between the time the officer gave the citation to Mr. Miller and then he came back and arrested him? Seconds. Well. Literally seconds between the time. Can we tell? I mean, does anybody, can I tell from this record? You say seconds, but I'm trying to figure out how I can tell from the record how long it was. You can tell from the record in that we have submitted two body cameras from Officer Bailey, SER3 and SER7, and those two have timestamps on them. Mr. Cameron says there's a 30 second. They're trying to think of the old Rosemary Woods thing. There's a 30 second break in the body cam. Is that right? Only for the start of the audio, but the video and the timestamp remain. Okay. So by putting those two together, you will see Officer Bailey. We can't tell what was said necessarily, but we, so we know that he was given the citation and then about 30 seconds later he was arrested. Well, I'm not conceding the 30 seconds, but he says, Officer Bailey says, have a nice day, Randon. Mr. Miller responds with expletive and he's walking to the east. And then you can see on the arrest video, which is the second video, Mr. Miller coming out of the door and that's when the arrest occurs. And the timestamp will be there for the court. The timestamp is there and the timestamp is there when he hands him the citation. Yes. Okay. Now, my next question is, can we tell from the recordings, the nature of the obscenities that were you? Oh, yes. That's what I thought. Do any of them suggest that it's, that whatever the officer thought about the likelihood of Mr. Miller appearing when he handed him the citation, he had less reason to believe after the subsequent colloquy that he might appear? The only thing I can say to that, Your Honor, is that the officer noted that in the report. I'm just going to tear it up and throw it in the GD trash anyway. That after he was given the citation or before? It was before when he was asked to sign it. Right, but at that point, the officer didn't think he had to arrest him. So I'm trying to figure out whether something happened, aside from the disorderly conduct, with respect to the assurance that he might appear in court in that interim, between that 32nd interim, if you will. That is not apparent from the record. I can't say that from the record, Your Honor. Thank you. Let me make sure Judge Kuhl doesn't have any questions. I have no questions. Can I have one last question? So I noted at the beginning of your argument that you mentioned that he was arrested under 2020-9, but he was arrested on April 11th. By that point, the executive order 2020-18 was in existence. So how can you say he was arrested under 2020-9 when 2018 was the most operative executive order? Well, two points, Your Honor. 2020-18 did not supersede 2020-9. Sure, but it did give a new right for people arrested. And in the plaintiff's supplemental response to the motion for summary judgment, plaintiff concedes he was arrested under 2020-9. Whether he concedes that or not, can you address Judge Blumenthal's question about the warnings, which is, I think, the supplemental? Certainly. So if you read the language of 2020-18, this is the stay home, stay healthy order. The language is very different than 2020-09, which is directed towards businesses. 2020— Doesn't that hurt you? I'm sorry? Doesn't that hurt you? Not necessarily, because Judge Kiley's order— Okay, I didn't mean to take you aside from that, but go ahead. I think this is an important point, Your Honor. Judge Kiley's order never reached the party's varying difference of interpretation regarding 26-317s, expressly said, I'm not going to reach that issue, and limited his analysis to 2043. Judge Kiley's order, which deals with a subsequent executive order, I'm still interested in what I think, I hope Judge Blumenthal is asking you, but if he's not, I am. Go ahead. You might as well go. Was your client, was Mr. Cameron's client entitled to warnings before he was arrested for violation of whatever executive order he was arrested? Two answers to that. If he was, he got them on March 27th and March 28th. Okay, but then the executive order was March 31st, which is the one that granted him that right. Certainly, and to say that he didn't, we didn't comply with an order that was not in effect until after we gave the notice would be to exalt form over substance. Or it could be an ex post facto violation, I don't know. But it doesn't negate probable cause. Why not? So if on dash 18 gives him a right of warning and he wasn't warned under that order, that does negate probable cause. But the notice provision gives him an opportunity to comply. Correct. We gave him notice on the 27th and the 28th. Under a different order. Under an order that didn't require notice. Correct. On 2018, that notice provision is paragraph 14. And it specifically says, It is intent is to ensure the people maintain physical distances. And the notice provision allowed a person, not a business, to be notified. Here's my problem. You're confusing two arguments here. Let's assume that all the executive orders in existence at the time Mr. Miller was arrested applied to persons. Not just to businesses, but to persons. And there's no doubt he was warned previously to stop violating the executive order. The question that interests me in this case is, do those warnings have to occur before or after the time that the executive order, the last executive order was promulgated? And our response would be no, given the fact. No, before or after. They have to occur before or after. Tell me which one. Judge Hurwitz. The warnings were before. Judge Gould, maybe you can take a better shot at this. Well, I was going to say, Judge Hurwitz, when you lean back. I chastise counsel for moving away from the microphone and I'm hoist on my own petard. OK, so again, let's try this again. Do the warnings have to come before or after the promulgation of the executive order on March 31st, I think it is. 2018. 20, 28th. Our position is they were not required at all because he was arrested under 2020-09. OK, assume that they were required. I'm going to pin you down on this. Then the warning that we provided before satisfied the intent of the order, which was to let you know and give you an opportunity to comply, which we let him know, which is unassailed in the record. And on the 10th, we observed a continuing violation. And then we came back and issued the citation. But this goes to the mistake of law. That's a different question, whether or not it's a mistake of law. A reasonable officer would believe that those warnings and the continuing violation was sufficient under the new order, which we're changing every two weeks. So so I guess your answer is to summarize it. The previous order sufficed. But even if they didn't, the officer officer's mistake in not giving new warnings was a reasonable mistake of law. Exactly. Under Hein versus North Carolina. Yeah, I mean, to push back on that, the order, the notice provision says prior to any enforcement action being taken to enforce this order, correct, which is 20-18, not any other prior order. So how is that a reasonable mistake of fact or mistake of law that warning under promulgate for any other prior order satisfies this requirement? Because the officers had a reasonable belief that they were enforcing 2020-09, which had no notice provision. That's a different question. And now I'm going to take you another minute. Sorry. Are all these orders in effect on the date that Mr. Miller is arrested? I mean, they don't, I'm not sure that they don't, if they supplement, supersede. What do you, what's your position about what orders are in effect? Well, for example, 2020-12, which was the order enacted after 20-09, specifically says this order does not supersede 2020-09. 2020-18 is silent as to its effect. But it's identical in its provisions that affect Mr. Miller, which is to say he can't engage in in-restaurant serving. I disagree. It is not, well. You think it adds something? It is not identical in that it does not have the same language. Right, but the prohibition is precisely the same, is it not? But it is aimed at the conduct of people not visiting premises that serve on-site facilities. Is it your position that the third executive order warnings have to be given to visitors and not to the operator of the place? I think if you look at the intent of 2020-18, this was our pronouncement by the governor to the people. Stay home. Don't use public transportation. Don't go to these places. So in your view, the previous two executive orders dealt with a prohibition on operations. Yes. And the third executive order dealt with a prohibition on people going to places, but they could not be punished for doing so absent warning. Which is why the notice provision was so important. We want to tell the individual people. I'm sorry, I did not understand that argument. And I apologize for not making that more clear. That's why there was notice there, as opposed to in the prior orders. Because we're telling the folks, the ordinary folks, who are grappling with this horrible thing, we're not going to just go out and cite you. We're going to give you a chance. But the contradiction in your argument is that you're saying the first two orders are only at businesses, right? Yes. But then you're saying Miller was arrested under the first order. Yes. Which was only at businesses. And he's not a business. But, but... You seem like you're trying to have it all ways. But I understand that, Your Honor. But this is the problem. Judge Kiley grappled with that as well in his order, in understanding how 26-317 is to be enforced. But the very first line of that statute is a person who violates this order. And then the second line applies to a private organization. And so, what is a reasonable officer to understand in terms of I'm supposed to go out there and enforce these orders? But Judge Kiley never got to that issue. And so, borrowing from the realm of qualified immunity... There was a legal error. It's just whether or not it's reasonable. Exactly. So, borrowing from Hine versus North Carolina, Judge... I think we've taken you over. But Judge Kagan's concurrence said... I understand. If it takes all of us to figure it out... I said we've taken you over, and I was about to say... I have one question. Judge Gould has a question. And my question is this. If the order, that issue, applies only to businesses, does it apply to Mr. Miller? Because he's the... I thought he was the sole owner of his business. Our position is a reasonable police officer would believe that it applied to Miller on the date of the arrest. And if that's wrong, it was a reasonable mistake of law. Thank you, Counsel. Thank you, Your Honor. Thank you. We took you way over. Thank you for indulging me. Well, you indulged us. We're going to give you four minutes for rebuttal. Thank you. Judge, let me start with the last question that was asked and answered first. Mr. Miller owns the LLC that owns the business. He is a manager, just like an owner. But he, an LLC, is sort of a corporation, and that's sort of a partnership. But there isn't any doubt that Mr. Miller owns and runs this business. He runs the business, correct, Your Honor. But I mean, as long as we're using corporate terms, I mean, it is an entity on its own. Is it your position that somebody who owns the LLC, that owns a restaurant, can't be personally cited for violating the executive order because he's hiding behind the corporate veil? No, Judge. I happen to agree with Judge Kiley, though it is directed at businesses, not at individuals. Judge Kiley's talking about a subsequent executive order. I know. My idea, Judge, is it applies to all of the executive orders. I understand, but that's not what I'm asking. I'm asking if it, in fact, can be applied to whether either businesses or individuals. So if you own an LLC, then you personally can't be cited for violating the executive order? No, Judge. This is the way I look at it. What is in the executive order? You have the statute that says any person can be held criminally liable for violating the order. Then you look at the order to determine what duty people have to follow, and you look at the order and it says, it doesn't say anything about waitresses, or bartenders, or cooks, or managers, or anybody else. It doesn't say any of them are personally liable for violating orders. That's why Judge Kiley went to the business, and he found that only the business was responsible. And, you know, I guess one of the problems is we're dealing with a superior court order that may or may not be correct or wasn't appealed. But let's assume Judge Kiley is right. So your position is that the LLC can be criminally charged for violating the executive order, but not the person who owns the LLC? Correct. Okay. Or his employees, because they would be aiding and abetting. But nobody charged an employee here. Judge, the issue came up of whether a probable cause is dispositive of the issue. If, in my view, if there's still questions about probable cause, they're jury questions. They normally are. If you can look at Duran, you look at any of Southwest, you look at any of the Ninth Circuit cases, then you've got a jury question. Can I just go back to what you were saying before about whether or not it applies to people or businesses, and whether or not warnings have to be prior to the 2020-18 order. Why are those not reasonableness of law, which is what the government's counsel is arguing? Judge, the basics on criminal liability are that you have a criminal conduct committed by a specific person. Okay? If you don't have a specific person set forth in the statute or that it's applicable to, you've got a vagueness issue. Well, we've been dancing around with you and your friend here for 20 minutes on what the statutes or the executive orders provide or don't provide. You've both made reasonable points. I'm thinking of the police officer on the scene. Could he reasonably have believed that the statute applied to individuals even if you think it does not? I don't think so, Judge. First of all, Hine was never raised. We don't know what these police officers thought, what their legal reasoning was or anything else. And that's what Hine says. It has to be a reasonable belief. But it's an objectively reasonable belief. We don't look in their minds. Judge, once again, could you get the mic? Yes, sorry. Is the standard under Hine an objective belief or a subjective belief? Yes, it's an objective belief, but it's not an objective legal position. I mean, that's not what the Supreme Court said. It's not a bunch of lawyers who, after the fact, come in and argue the case. It's what did the guys believe at the time. And we don't have any evidence of that. Whatsoever. Thank you. You've used your rebuttal time up. If you have one other point, make it quickly. Judge, I just wanted to go to the site and release. To me, that's dispositive of the grounds that they're alleging for the arrest of the defendant. Because they're saying it's because he violated the emergency order and we get a do-over, so to speak, in terms of the Fourth Amendment. That is just unreasonable to the max. You cannot re-arrest somebody for when you've just released them. And the fact that he might tear up his ticket is no grounds to re-arrest him. That's just crazy. Thank you. Thank both sides for their patience today. And I thank Judge Gould for his patience in reminding me that I moved away from the microphone. And this case will be submitted.
judges: GOULD, HURWITZ, BUMATAY